**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SHAYNA RAE HOLMES, | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | NO. 4:17-CV-3552 |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER
## ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Shayna Rae Holmes ("Ms. Holmes" or "Plaintiff") sought review of the denial of her request for disability and disability insurance benefits under Title II of the Social Security Act ("the Act"). ECF No. 1. The Parties consented to have this Court conduct all proceedings in this matter pursuant to 28 U.S.C. § 636(c) and filed cross-motions for summary judgment. ECF Nos. 8, 10, 11, 12. Based on the briefing and the record, the Court **DENIES** Plaintiff's motion, **GRANTS** the Commissioner of the Social Security Administration's ("Commissioner") motion, and **DISMISSES** the action **with prejudice**.

## I.
## BACKGROUND

Plaintiff is a 34-year-old woman. R. 423. After high school, she held

miscellaneous part-time jobs as a server in a restaurant and as a manager in entertainment. R. 92, 318. She then joined the U.S. Marine Corps as a Spanish cryptologic linguist in intelligence in 2007. R. 77, 318, 824. Plaintiff was diagnosed with narcolepsy in 2009 and with anxiety around the same time while she was in the military. R. 49-50, 79, 550-51, 575, 825. Plaintiff was also diagnosed with sleep apnea in 2013.[1] R. 575. Plaintiff obtained a medical discharge from the military in 2010 and has not worked since then. R. 79, 312-13, 318, 544, 658, 824. She obtained her associate's degree in Spanish in 2011, and was working toward her bachelor's degree, but did not complete it due to her impairments. R. 47, 55, 76, 85, 450, 825.

On January 16, 2015, Ms. Holmes filed an application under Title II seeking benefits beginning on October 31, 2013 based on anxiety, thyroid disorder, and narcolepsy.[2] R. 98, 147, 284, 290, 328. On February 9, 2015, the Commissioner denied her claim. R. 147. On or about March 6, 2015, Plaintiff requested reconsideration of her claim. R. 151, 338, 342. On May 1, 2015, the Commissioner

---

[1] Although Plaintiff has other impairments, her sleep-related and mental impairments form the basis of her appeal. Therefore, the Court will consider the medical records related to Plaintiff's sleep-related and mental impairments. *See Harris v. Colvin*, No. H-13-2893, 2014 WL 12540446, at *4 (S.D. Tex. June 12, 2014).

[2] The relevant time period is October 31, 2013—Plaintiff's alleged onset date—through December 31, 2015—Plaintiff's last insured date. R. 26. The Court will consider medical evidence that pre-dates and post-dates this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Stancle v. Colvin*, No. 4:15-CV-405, 2016 WL 3172784, at *3 n.4 (E.D. Tex. June 7, 2016) (citing *Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997)).

again denied her claim. R. 151. On or about June 12, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 154-55. ALJ Ross Stubblefield conducted a hearing on February 16, 2016. R. 43-71. Plaintiff and Kassandra Humphress, a vocational expert, testified. R. 44, 386. On March 15, 2016, the ALJ denied Ms. Holmes' application for benefits. R. 121-33. On July 8, 2016, after Ms. Holmes requested the Appeals Council to review the ALJ's decision, the Appeals Council remanded her case back to the same ALJ to obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base, and if relevant, determine whether Plaintiff acquired any skills that are transferable. R. 138-41.

ALJ Ross Stubblefield conducted a second hearing on May 23, 2017. R. 72-96. Plaintiff and Charles Poor, a vocational expert, testified. R. 73. On July 21, 2017, the ALJ issued a second decision, again denying Ms. Holmes' application for benefits.[3] R. 24-37. On July 28, 2017, Ms. Holmes again requested the Appeals

---

[3] The ALJ determined Ms. Holmes was not disabled at Step Five. R. 35-36. At Step Two, the ALJ found Plaintiff has the following medically determinable and severe impairments: narcolepsy, sleep apnea, plantar fasciitis, depression, and anxiety. R. 26. He also found she has a thyroid disorder and a history of lumbosacral and hip strain, but that they were not severe. R. 27. At Step Three, the ALJ found these impairments or combination of impairments do not rise to the level of severity of the impairments in Listings 1.02, 12.04, 12.06, or any other Listing. R. 27-28. At Step Four, he found Plaintiff has the residual functional capacity to perform light work, except she cannot climb ladders, ropes, or scaffolds; must avoid all exposure to unprotected heights and hazardous machinery; and is limited to simple, routine work. R. 28. The ALJ determined that, while her medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning their intensity, persistence, and limiting effects are not entirely credible. R. 29. At Step Five, the ALJ found that, while Plaintiff was not capable of

Council to review the ALJ's decision. R. 282-83. On September 19, 2017, the Appeals Council denied Plaintiff's request for review. R. 1-4; *see Sims v. Apfel*, 530 U.S. 103, 106 (2000) (explaining that when the Appeals Council denies the request for review, the ALJ's opinion becomes the final decision). On November 20, 2017, Ms. Holmes filed this civil action. ECF No. 1.

## II.
## STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any facts, if supported by substantial evidence, shall be conclusive ….

*Id*. Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied. *Id*.; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). It is "more than a scintilla but less than a preponderance." *Id*.

---

performing her past work, she could adjust to other work that existed in the national market. R. 35-36.

A reviewing court may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id*. (internal quotation marks and citation omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985); *Singletary v. Brown*, 798 F.2d 818, 822-23 (5th Cir. 1986). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Id*. A court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

### III.
### ANALYSIS OF PLAINTIFF'S CHALLENGES TO THE ALJ'S DECISION

Plaintiff argued (1) the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence because the ALJ gave too little weight to Plaintiff's treating doctors' opinions, and (2) the ALJ's Step Five determination is not supported by substantial evidence because it was based on an incomplete hypothetical to the vocational expert ("VE"). ECF No. 10-1 at 11-19.

**A. The ALJ Properly Considered Plaintiff's Treating Doctors' Opinions.**

Plaintiff contended the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to give controlling weight to Plaintiff's treating doctors. ECF No. 10-1 at 13-19. Defendant responded that the ALJ properly weighed the medical opinion evidence. ECF No. 11 at 5-12.

Generally, a treating doctor's opinion should be given "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Clauson v. Astrue*, No. 4:12-CV-2321, 2013 WL 6146047, at *6 (S.D. Tex. Nov. 21, 2013) (quoting 20 C.F.R. § 404.1527(d)(2)). "However, an ALJ may give 'less weight, little weight, or even no weight' to a treating physician's statements when they are 'brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.'" *Manzano v. Berryhill*, No. 4:16-CV-3496, 2018 WL 1518558, at *9 (S.D. Tex. Mar. 28, 2018) (citations omitted). A treating physician's opinion may be given no weight where the ALJ considered the factors under 20 C.F.R. § 404.1527(d):

> (1) The physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole, and (6) the specialization of the treating physician.

*Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). The ALJ is required to "give good reasons in [her] notice of determination or decision for the weight [she gives the claimant's] treating source's opinion." *Id.*

### 1. Dr. John Doggett.

#### a. *Dr. Doggett's opinion.*

Dr. John Doggett, a sleep specialist at the New Mexico Center for Sleep Medicine, treated Plaintiff for her narcolepsy between November 19, 2013 and April 1, 2015.[4] On March 27, 2015, Dr. Doggett filled out an RFC questionnaire for Plaintiff. R. 854-56. He indicated that he first evaluated Plaintiff on November 19, 2013, but she was originally diagnosed with narcolepsy on September 13, 2009. R. 854. Her diagnosis included narcolepsy with cataplexy and her prognosis is chronic moderate impairment. R. 854. Her symptoms include sleepiness and she falls asleep very easily when not physically active. R. 854. He opined that her symptoms are frequently severe enough to interfere with the attention and concentration required to perform simple work-related tasks. R. 854. He noted her medications have no side effects that may impact her ability to work. R. 854. He indicated she would need a 20 to 30-minute nap once or twice a day during a normal work day and she would be absent approximately three to four times per month. R. 854-55. He

---

[4] Nov. 19, 2013 (R. 544); Dec. 18, 2013 (R. 550); Apr. 3, 2014 (R. 552); July 28, 2014 (R. 583); Oct. 6, 2014 (R. 558); Apr. 1, 2015 (R. 879).

said she is not a malingerer and her impairments are reasonably consistent with the symptoms and limitations discussed in the evaluation. R. 855. He said she is physically capable of working an 8-hour day, five days a week on a sustained basis, with accommodations, according to an attached letter. R. 855.

In the attached letter, Dr. Doggett explained generally that narcolepsy causes severe excessive daytime sleepiness, it is a permanent condition that typically remains for life, and it causes episodic lapses of attention. R. 727. He explained further, in general terms, that persons with narcolepsy fall asleep easily during the day; have fragmented sleep during daytime which impacts functioning during the day; they may have to sleep in late to make up for it or experience increased sleepiness; and it is often beneficial to have a flexible work schedule due to unpredictability of night-time sleep quality and daytime alertness. R. 727. In a classroom situation, this causes difficulty completing assignments due to sleepiness, difficulty staying awake in class. R. 727. Common accommodations include avoiding overnight work shifts, flexibility in daytime work shifts, scheduling frequent naps, and frequent breaks to allow restoration of alertness. R. 727. In the absence of effective treatment, it can cause severe drowsiness, lapses of attention, and may increase risk of driving accidents. R. 727. He further explained that narcolepsy requires chronic use of stimulant medications to maintain alertness during the day and will cause a positive result on a urine drug screening. R. 727.

### b. The ALJ gave Dr. Doggett's opinion "little weight."

Here, the ALJ did not reject Dr. Doggett's opinion, but gave it "little" weight. R. 33; *see Manzano*, 2018 WL 1518558, at *10 (ALJ was not required to perform the six-step analysis discussed in *Newton* where she did not entirely reject treating physician's opinion but properly gave it less weight) (citing *Jones v. Astrue*, 821 F. Supp. 2d 842, 852 (N.D. Tex. 2011)); *see also Nguyen v. Colvin*, No. 4:13-CV-2957, 2015 WL 222328, at *11 (S.D. Tex. Jan. 14, 2015) (finding *Newton* factor-analysis was not required where ALJ did not summarily reject opinion of a treating physician solely based upon conclusions of a non-examining medical expert).[5]

The ALJ specifically explained that he gave less weight to Dr. Doggett's opinion because it is inconsistent with his treatment records for Plaintiff, which showed her impairment was only moderate.[6] R. 33. It was also inconsistent with the psychiatrist's records that showed Plaintiff's condition did not result in deficits of

---

[5] Plaintiff argued that the ALJ rejected all medical opinions, and with the rejection of every opinion in evidence, there is no support in the record for the ALJ's RFC determination. ECF No. 10-1 at 15. Plaintiff further argued the ALJ cannot reject treating source opinions without going through the *Newton* analysis unless there are controverting opinions by an examining or treating source. *Id.* at 14 (citing *Newton*, 209 F.3d at 453; *Wilkerson v. Berryhill*, No. 3:16-CV-851, 2017 WL 1091601, at *3 (N.D. Tex. Mar. 23, 2017); *Lagrone v. Colvin*, No. 4:12-CV-792, 2013 WL 6157164, at *6 (N.D. Tex. Nov. 22, 2013)). However, these are each distinguishable because the ALJ did not entirely reject the opinions of Plaintiff's treating doctors, but rather gave them little weight. R. 33-34. Thus, this is not a case where "because the ALJ rejected all medical opinions in the record … there is no medical evidence supporting the ALJ's RFC determination." *Lagrone*, 2013 WL 6157164, at *6.

[6] *See, e.g.*, *Nguyen*, 2015 WL 222328, at *11 (ALJ properly discounted treating physicians' opinions because they were unsupported by the objective medical evidence, which showed only "moderate" impairment).

attention, memory, or concentration.[7] *Id*. The ALJ further gave little weight to Dr. Doggett because even though he alleged Plaintiff was limited by her impairments since 2009, he only treated her starting in November 2013.[8] In addition, the letter he wrote regarding accommodations for persons with narcolepsy was very general in nature, and it was unclear that she actually had the symptoms typical of persons with narcolepsy such that she required those accommodations. *Id*.

It is apparent the ALJ did not fully reject Dr. Doggett's opinion because the ALJ found that Plaintiff had severe impairments including narcolepsy and anxiety; moderate limitations in concentration, persistence, and pace; mild limitations in memory and interacting with others; she should be limited to simple, routine work; and she could not perform her past work. R. 26-35. The ALJ even departed from the non-examining state agency consultative doctors, who found Plaintiff had no severe impairments and her only non-severe impairments were anxiety and sleep-related disorders. R. 34, 101, 104, 115. In contrast, the ALJ found Plaintiff had several severe impairments including narcolepsy, anxiety, sleep apnea, and other severe and non-severe impairments. R. 26-27. Thus, the ALJ credited Dr. Doggett's opinion to

---

[7] As discussed below, none of Plaintiff's mental status examinations showed any impairment in her attention, memory, or concentration.

[8] *See, e.g.*, *Smith v. Colvin*, No. 12-CV-3290, 2014 WL 11538275, at *8 (S.D. Tex. Oct. 27, 2014) (ALJ properly gave less weight to treating physician's opinion which was internally inconsistent because treating physician indicated claimant's limitations had been present since 2007, but the physician did not begin treating claimant until 2010), *report and recommendation adopted*, 2014 WL 11533932 (S.D. Tex. Dec. 12, 2014), *aff'd*, 605 F. App'x 443 (5th Cir. 2015).

at least some extent. Indeed, Dr. Doggett did not say Plaintiff was completely disabled, but rather she could work full-time with accommodations. R. 855. The ALJ departed from Dr. Doggett's opinion to the extent he did not find the need for the recommended number of breaks to be entirely credible. He recognized Plaintiff has limitations but did not think her conditions were severe enough to find her totally disabled. *See, e.g.*, *Frank v. Barnhart*, 326 F.3d 618, 620-21 (5th Cir. 2003) (ALJ did not err in giving little weight to treating doctor's opinion where ALJ did not reach any conclusions that conflicted with the doctor's evaluation that Plaintiff suffered from certain conditions).

### c. Substantial evidence supports the ALJ's decision to give "little weight" to Dr. Doggett's opinion.

Throughout his decision, the ALJ discussed other evidence in the record that was inconsistent with Dr. Doggett's opinion. R. 28-35. While Dr. Doggett's opinion is not wholly unsupported by his own treatment notes, there are inconsistencies with the record as a whole. Thus, the ALJ's decision is supported by substantial evidence. *See Nguyen*, 2015 WL 222328, at *9 (ALJ properly discounted the treating physicians' opinions by relying on objective medical evidence including that medication was effective, claimant's subjective statements of pain were not credible, and claimant's reported activities of daily living).

Plaintiff took stimulant medications to treat narcolepsy, and they were

adjusted as needed.[9] On numerous occasions she reported these worked well to keep her awake.[10] *See Muniz v. Astrue*, No. 4:13-CV-2002, 2014 WL 2441209, at \*10 n.5 (S.D. Tex. May 30, 2014) ("[I]f an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability.") (quoting *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988)); *see also Ventura v. Colvin*, No. 6:16-CV-16, 2017 WL 1397130, at \*8 (S.D. Tex. Feb. 27, 2017) ("Pain must be … wholly unresponsive to therapeutic treatment to be disabling.") (quoting *Chambliss v. Massanari*, 269 F.3d 520, 521 (5th Cir. 2001)), *report and recommendation adopted*, 2017 WL 1397131 (S.D. Tex. Mar. 30, 2017). The ALJ noted that Plaintiff stopped her medications during pregnancy and was asymptomatic. R. 30; *see* R. 544. Plaintiff also had surgery[11] and used a continuous

---

[9] Oct. 5, 2012 (R. 497-98); Oct. 16, 2012 (R. 494); Nov. 9, 2012 (R. 486); Dec. 20, 2012 (R. 470); Jan. 18, 2013 (R. 461); Jan. 22, 2013 (R. 460); Jan. 25, 2013 (R. 457); Feb. 26, 2013 (R. 455); Apr. 5, 2013 (R. 452); May 6, 2013 (R. 450); May 14, 2013 (R. 686); June 19, 2013 (R. 679); July 9, 2013 (R. 575); Aug. 5, 2013 (R. 446); Aug. 15, 2013 (R. 521); Sept. 24, 2013 (R. 443); Oct. 15, 2013 (R. 437, 440); Oct. 24, 2013 (R. 438); Nov. 14, 2013 (R.433); Nov. 19, 2013 (R. 543); Nov. 25, 2013 (R. 431); Dec. 2, 2013 (R. 428); Dec. 17, 2013 (R. 425-27); Dec. 18, 2013 (R. 548, 549); Jan. 30, 2014 (R. 653); Apr. 3, 2014 (R. 552); Apr. 14, 2014 (R. 642); Apr. 30, 2014 (R. 423); June 8, 2014 (R. 517); June 23, 2014 (R. 514, 516); Sept. 24, 2014 (R. 532); Oct. 2, 2014 (R. 536-37); Oct. 6, 2014 (R. 556-57); Nov. 4, 2014 (R. 435); Dec. 8, 2014 (R. 562); Apr. 1, 2015 (R. 879); Sept. 23, 2015 (R. 917); Nov. 4, 2015 (R. 958); Dec. 9, 2015 (R. 956); May 23, 2017 (R. 82, 83).

[10] Oct. 5, 2012 (R. 500); Nov. 30, 2012 (R.479); Dec. 20, 2012 (R. 469); Jan. 4, 2013 (R. 467); Jan. 18, 2013 (R. 461); May 14, 2013 (R. 686); June 19, 2013 (R. 679); Dec. 18, 2013 (R. 550); Apr. 3, 2014 (R. 554); Oct. 6, 2014 (R. 558); Feb. 16, 2016 (R. 65); May 23, 2017 (R. 83).

[11] Mar. 12, 2015 (R. 751, 774); Apr. 1, 2015 (R. 879); Feb. 16, 2016 (R. 54).

positive airway pressure ("CPAP") machine and positional therapy[12] to treat sleep apnea.[13] She testified the CPAP effectively controlled her sleep apnea. R. 53-54.

The ALJ noted that one of Plaintiff's treating physicians questioned her narcolepsy diagnosis because she did not have any typical symptoms of narcolepsy except for fatigue and her blood tests for HLA typing generally seen in individuals with narcolepsy was negative.[14] R. 30. Other than a dysphoric mood, her mental status examinations were essentially normal, including normal alertness, thought processes, attention, concentration, orientation, memory, judgment, and insight.[15]

The ALJ also emphasized that Plaintiff was able to independently handle extensive activities of daily living, including taking care of her toddler,[16] performing

---

[12] July 9, 2013 (R. 576); Apr. 1, 2015 (R. 879, 880, 882); Mar. 5, 2015 (R. 850); Mar. 12, 2015 (R. 758); Dec. 9, 2015 (R. 956); Feb. 16, 2016 (R. 53-54).

[13] July 9, 2013 (R. 576); Dec. 18, 2013 (R. 549, 551); Oct. 6, 2014 (R. 559).

[14] June 19, 2013 (R. 681); Jan. 23, 2014 (R. 658); Jan. 30, 2014 (R. 654); Feb. 14, 2014 (R. 655); Feb. 21, 2014 (R. 650-61); Apr. 14, 2014 (R. 642, 647, 649); Mar. 5, 2015 (R. 849, 851); Dec. 9, 2015 (R. 954, 961).

[15] Nov. 21, 2012 (R. 485); Jan. 22, 2013 (R. 459); June 19, 2013 (R. 681); Aug. 15, 2013 (R. 521); Sept. 4, 2013 (R. 674, 675); Nov. 19, 2013 (R. 546); Jan. 30, 2014 (R. 654); June 18, 2014 (R. 517-18); June 23, 2014 (R. 514, 515); July 28, 2014 (R. 629); Aug. 11, 2014 (R. 626); Aug. 29, 2014 (R. 624); Sept. 19, 2014 (R. 603-04); Sept. 24, 2014 (R. 534); Sept. 26, 2014 (R. 622); Oct. 2, 2014 (R. 540); Oct. 10, 2014 (R. 620); Nov. 19, 2014 (R. 618); Dec. 5, 2014 (R. 616); Dec. 8, 2014 (R. 565); Jan. 5, 2015 (R. 614, 724); Jan. 19, 2015 (R. 612); Feb. 2, 2015 (R. 721); Feb. 18, 2015 (R. 701); Mar. 2, 2015 (R. 720); Mar. 13, 2015 (R. 738, 738); Mar. 27, 2015 (R. 826-27); Apr. 30, 2015 (R. 870); May 8, 2015 (R. 867); Sept. 23, 2015 (R. 916).

[16] Mar. 23, 2015 (R. 347, 348, 354); Mar. 30, 2015 (R. 358).

household chores,[17] personal grooming,[18] cooking,[19] shopping,[20] handling finances,[21] driving,[22] traveling,[23] spending time with friends and family,[24] exercising regularly,[25] and taking college courses.[26] R. 32. Notably, she reported she was able to stay awake while driving.[27] R. 30. "The medical evidence failed to show any significant limitations on her activities." *Manzano*, 2018 WL 1518558, at *5 (citation omitted); *see also Melendez v. Colvin*, No. H-13-3605, 2014 WL 4167499, at *6 (S.D. Tex. Aug. 20, 2014) (affirming denial of benefits where claimant could handle several ADLs, despite impairments including depression); *accord Harris v. Colvin*, No. H-13-2893, 2014 WL 12540446, at *6 (S.D. Tex. June 12, 2014) (same).

---

[17] Mar. 23, 2015 (R. 349); Mar. 30, 2015 (R. 358, 359, 360).

[18] Mar. 23, 2015 (R. 348).

[19] Mar. 23, 2015 (R. 349, 354); Mar. 30, 2015 (R. 358, 359, 360).

[20] Mar. 23, 2015 (R. 350); Mar. 30, 2015 (R. 361).

[21] Mar. 23, 2015 (R. 350-51); Mar. 27, 2015 (R. 827); Mar. 30, 2015 (R. 361).

[22] Mar. 23, 2015 (R. 374, 350); Mar. 30, 2015 (R. 361); Feb. 16, 2016 (R. 64).

[23] Nov. 19, 2014 (R. 618); Jan. 5, 2015 (R. 614, 724).

[24] Sept. 26, 2014 (R. 622); Nov. 19, 2014 (R. 618); Jan. 5, 2015 (R. 614, 724); Mar. 23, 2015 (R. 351); Mar. 27, 2015 (R. 824).

[25] Nov. 9, 2012 (R. 491); Dec. 20, 2012 (R. 469); Jan. 11, 2013 (R. 465); Jan. 17, 2013 (R. 464); Nov. 19, 2013 (R. 544); Apr. 14, 2014 (R. 645); Sept. 24, 2014 (R. 532); Dec. 5, 2014 (R. 616); Mar. 12, 2015 (R. 803); Mar. 23, 2015 (R. 347).

[26] Nov. 9, 2012 (R. 490); June 19, 2013 (R. 681); Jan. 19, 2015 (R. 612); Feb. 2, 2015 (R. 721); Mar. 23, 2015 (R. 347); Mar. 27, 2015 (R. 824); Mar. 30, 2015 (R. 358).

[27] Nov. 19, 2013 (R. 545); Mar. 5, 2015 (R. 850); Nov. 4, 2015 (R. 958); Feb. 16, 2016 (R. 65); May 23, 2017 (R. 84).

## 2. Dr. Josip Gazic.

### a. Dr. Gazic's opinion.

Dr. Josip Gazic, a psychiatrist at the Sage Neuroscience Center, treated Plaintiff for anxiety between July 28, 2014 and May 8, 2015.[28] On April 3, 2015, Dr. Gazic filled out a mental capacity assessment for Plaintiff, listing her diagnoses for anxiety and narcolepsy. R. 859-62. He indicated that he treated her since July 28, 2014, and believes she had these restrictions since 2009. R. 862. He indicated that Plaintiff has the following limitations:

- moderate limitations in understanding and memory including her (a) ability to remember locations and work like procedures, (b) ability to understand and remember short and simple instructions, and (c) ability to understand and remember detailed instructions, R. 859;

- marked limitations in sustained concentration and persistence including her (a) ability to maintain attention and concentration for extended periods; (b) ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances; (c) ability to complete a normal workday without interruptions form psychologically based symptoms; (d) ability to complete a normal workweek without interruptions from psychologically based symptoms; and (e) ability to perform at a consistent pace with a standard number and length of rest periods, R. 859;

- only moderate limitations in other areas of sustained concentration and persistence including her (a) ability to carry out short and simple instructions, (b) ability to carry out detailed instructions, (c) ability to sustain ordinary routine without special supervision, (d) ability to work in coordination or proximity with others without being distracted, and

---

[28] July 28, 2014 (R. 628); Aug. 11, 2014 (R. 626); Aug. 29, 2014 (R. 624); Sept. 26, 2014 (R. 622); Oct. 10, 2014 (R. 620); Nov. 19, 2014 (R. 618); Dec. 5, 2014 (R. 616); Jan. 5, 2015 (R. 614); Jan. 19, 2015 (R. 612); Feb. 2, 2015 (R. 721); Mar. 2, 2015 (R. 720); Apr. 30, 2015 (R. 870); May 8, 2015 (R. 867).

(e) ability to make simple work-related decisions, R. 859;

- slight limitations in social interaction including her (a) ability to interact appropriately with the general public, (b) ability to ask simple questions or request assistance, and (c) ability to accept instructions and respond appropriately to criticism from supervisors, R. 860;

- no limitations in other areas of social interaction including her (a) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and (b) ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, R. 860; and

- moderate limitations in adaptation including her (a) ability to respond appropriately to changes in work setting, (b) ability to be aware of normal hazards and take appropriate precautions, (c) ability to travel in unfamiliar places or use public transportation, and (d) ability to set realistic goals or make plans independently of others), R. 861.

In addition, Dr. Gazic noted Plaintiff has some social anxiety and her number of absences per month would vary. R. 860.

### b. The ALJ gave Dr. Gazic's opinion "little weight."

As with Dr. Doggett, the ALJ did not reject Dr. Gazic's opinion, but properly gave it "little" weight and was not required to perform a detailed *Newton* analysis.[29] R. 34; *see Manzano*, 2018 WL 1518558, at *10; *Nguyen*, 2015 WL 222328, at *9. The ALJ specifically explained that he gave less weight to Dr. Gazic's opinion because it was inconsistent with the record generally, which reflected little mental

---

[29] Defendant also argued that *Newton v. Apfel* does not apply to brief and conclusory "check-the-box questionnaires" that Dr. Doggett and Dr. Gazic filled out, or to opinions on the ultimate issue of disability. ECF No. 12 at 9. However, the ALJ did not state he discounted the doctors' opinions for these reasons, and "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision…." *Newton*, 209 F.3d at 453.

health treatment and essentially normal mental status examinations. R. 34.

As discussed above with regard to Dr. Doggett, it is apparent the ALJ credited Dr. Gazic's opinion to some extent and did not fully reject it. R. 26-28. Dr. Gazic did not opine that Plaintiff could not work at all, but rather rated the severity of her limitations on work-related activities. R. 855. In line with Dr. Gazic's opinion, the ALJ found Plaintiff had severe impairments including narcolepsy and anxiety; moderate limitations in concentration, persistence, and pace; mild limitations in memory and interacting with others; she should be limited to simple, routine work; and she could not perform her past work. R. 26-35. The ALJ departed from Dr. Gazic's opinion to the extent he did not find the severity of her limitations to be fully credible. He recognized Plaintiff has limitations but did not think they were severe enough to find her totally disabled. *See, e.g.*, *Frank*, 326 F.3d at 620-21.

### c. Substantial evidence supports the ALJ's decision to give "little weight" to Dr. Gazic's opinion.

Throughout his decision, the ALJ discussed evidence in the record that was inconsistent with Dr. Gazic's opinion. R. 28-35. Dr. Gazic's opinion is inconsistent with his own treatment notes—which showed essentially normal mental status

examinations[30] and notable improvement in Plaintiff's anxiety disorder[31] —and the record as a whole. *See Nevarez v. Colvin*, No. M-15-313, 2016 WL 3636260, at \*5, 7 (S.D. Tex. May 2, 2016) (denial of benefits was supported by substantial evidence where claimant's mental status examinations were mostly normal, aside from depressed mood and affect), *report and recommendation adopted*, 2016 WL 3544820 (S.D. Tex. June 28, 2016); *see also Smith*, 2014 WL 11538275, at \*8 (ALJ properly gave treating physician's opinion "little weight" because it was inconsistent with the medical evidence, which showed claimant's condition continually improved).

Dr. Gazic noted on several occasions Plaintiff's mood was eurythmic; she reported having more energy; she expressed more hope and positivity for her future; and her symptoms of anxiety, agitation, and fatigue decreased.[32] Dr. Gazic's treatment records and the record as a whole show Plaintiff took medication for

---

[30] July 28, 2014 (R. 629); Aug. 11, 2014 (R. 626); Aug. 29, 2014 (R. 624); Sept. 26, 2014 (R. 622); Oct. 10, 2014 (R. 620); Nov. 19, 2014 (R. 618); Dec. 5, 2014 (R. 616); Jan. 5, 2015 (R. 614); Jan. 19, 2015 (R. 612); Feb. 2, 2015 (R. 721); Mar. 2, 2015 (R. 720); Apr. 30, 2015 (R. 870); May 8, 2015 (R. 867). Significantly, Dr. Gazic indicated in the mental capacity assessment that Plaintiff had moderate limitations in memory and marked limitations in sustained concentration and persistence, yet during each of his visits with Plaintiff, he specifically noted her memory and concentration were "grossly intact." *Id.*

[31] Sept. 26, 2014 (R. 622); Oct. 10, 2014 (R. 620); Nov. 19, 2014 (R. 618, 619); Dec. 5, 2014 (R. 616); Jan. 5, 2015 (R. 614); Jan. 19, 2015 (R. 612); Feb. 2, 2015 (R. 721); May 8, 2015 (R. 867).

[32] *Id.*

anxiety,[33] and on numerous occasions, she reported the medication was effective.[34]
*See Sajadi v. Colvin*, No. 4:14-CV-1885, 2015 WL 12570842, at *9 (S.D. Tex. July 17, 2015) (ALJ's denial of benefits was supported by substantial evidence where claimant took medication for depression that was effective) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988)); *see also Ventura*, 2017 WL 1397130, at *8; *Muniz*, 2014 WL 2441209, at *10 n.5. In addition, she attended therapy,[35] which she also reported was effective.[36] Dr. Gazic's opinion is contrary to the evidence and may be given less weight. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

---

[33] Oct. 5, 2012 (R. 498); Oct. 16, 2012 (R. 494, 495); Nov. 9, 2012 (R. 486, 490); Dec. 20, 2012 (R. 470); Jan. 18, 2013 (R. 461); Jan. 22, 2013 (R. 459); Jan. 25, 2013 (R. 457); Feb. 26, 2013 (R. 454, 455); Apr. 5, 2013 (R. 452); May 6, 2013 (R. 450); Aug. 5, 2013 (R. 445, 446); Aug. 15, 2013 (R. 521); Sept. 4, 2013 (R. 674); Sept. 24, 2013 (R. 442); Oct. 15, 2013 (R. 440); Oct. 24, 2013 (R. 437); Nov. 4, 2013 (R. 435); Nov. 14, 2013 (R. 433); Nov. 19, 2013 (R. 543); Dec. 2, 2013 (R. 428); Dec. 17, 2013 (R. 425); Dec. 18, 2013 (R. 549); Jan. 30, 2014 (R. 653); Apr. 3, 2014 (R. 553); Apr. 14, 2014 (R. 642, 647); Apr. 30, 2014 (R. 423); June 18, 2014 (R. 517, 518); June 23, 2014 (R. 514); Sept. 24, 2014 (R. 532); Oct. 2, 2014 (R. 536-37); Apr. 1, 2015 (R. 882); July 28, 2014 (R. 628); Aug. 29, 2014 (R. 624); Sept. 26, 2014 (R. 622, 623); Oct. 10, 2014 (R. 621); Nov. 19, 2014 (R. 618); Dec. 5, 2014 (R. 616); Jan. 19, 2015 (R. 612); Mar. 2, 2015 (R. 720); Mar. 27, 2015 (R. 825); Apr. 30, 2015 (R. 870); May 8, 2015 (R. 867); Sept. 23, 2015 (R. 917); Nov. 4, 2015 (R. 958); Feb. 16, 2016 (R. 59); May 23, 2017 (R. 86).

[34] Nov. 9, 2012 (R. 490); Dec. 20, 2012 (R. 469); Sept. 24, 2013 (R. 442); Aug. 29, 2014 (R. 624); Sept. 26, 2014 (R. 622); Nov. 19, 2014 (R. 618); Dec. 5, 2014 (R. 616); Mar. 27, 2015 (R. 825); Apr. 1, 2015 (R. 882); Apr. 30, 2015 (R. 870); May 8, 2015 (R. 867); Feb. 16, 2016 (R. 59).

[35] July 28, 2014 (R. 628); Aug. 29, 2014 (R. 625); Sept. 26, 2014 (R. 623); Nov. 19, 2014 (R. 618); Dec. 5, 2014 (R. 616); Jan. 5, 2015 (R. 724); Jan. 19, 2015 (R. 612); Mar. 27, 2015 (R. 825); Apr. 30, 2015 (R. 870, 871); May 8, 2015 (R. 867); Jan. 27, 2016 (R. 894); May 23, 2017 (R. 86, 87).

[36] July 28, 2014 (R. 628); Nov. 19, 2014 (R. 618, 619); Dec. 5, 2014 (R. 616); Jan. 19, 2015 (R. 612); Apr. 30, 2015 (R. 870); May 8, 2015 (R. 867); May 23, 2017 (R. 87).

### 3. The ALJ's decision is supported by substantial evidence.

There is no doubt that Ms. Holmes suffers from sleep-related disorders and anxiety that result in some limitations on her ability to work. Despite going to college and taking care of her child, she had to drop out of school because she was unable to do the work and had to send her child to daycare to assist with childcare responsibilities. R. 55, 65, 85, 825, 827. If it were the factfinder, this Court might have weighed the medical evidence differently. However, the standard of review on appeal to the District Court is limited and "evidentiary conflicts are for the Commissioner, not the courts, to resolve."[37] *Guerra v. Colvin*, No. M-15-038, 2016 WL 1166337, at *10 (S.D. Tex. Feb. 5, 2016) (citing *Brown*, 192 F.3d at 496), *report and recommendation adopted*, 2016 WL 1223319 (S.D. Tex. Mar. 23, 2016). This is not a case of an ALJ picking and choosing limited pieces of evidence to support his analysis. To the contrary, there is more than substantial evidence to support each of his findings.[38] Based on the limited standard of review, the Court cannot conclude

---

[37] Plaintiff also argued that since the ALJ rejected all medical opinions, he "played doctor" and substituted his own opinion. ECF No. 10-1 at 19. However, the ALJ stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence … [and] opinion evidence…." R. 29. The ALJ discussed Plaintiff's medical records, work history, testimony, subjective complaints, and opinions by treating and examining doctors. R. 27-35. "[T]he determination of [RFC] is the sole responsibility of the ALJ…. What [claimant] characterizes as the ALJ substituting [his] own opinion is actually the ALJ properly interpreting the medical evidence to determine [Plaintiff's] capacity for work." *Manzano*, 2018 WL 1518558, at *9 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012)).

[38] *See supra*, nn.9-27, 30-36.

that the ALJ's decision is not supported by substantial evidence or that the ALJ committed reversible error.

### B. The ALJ Properly Incorporated Plaintiff's Limitations in Concentration, Persistence, And Pace Into His Hypothetical Questions To The Vocational Expert.

Plaintiff alleged the ALJ found that Plaintiff had moderate limitations in concentration, persistence, and pace, but failed to include corresponding limitations in his hypothetical questions to the VE to account for this limitation. ECF No. 10-1 at 20. Defendant alleged the ALJ's hypothetical need only reasonably incorporate the recognized limitations in the hypothetical question; and the ALJ reasonably accounted for any moderate limitations in concentration, persistence, or pace by limiting Plaintiff's RFC to simple, routine work. ECF No. 12 at 13.

### 1. The vocational expert's hearing testimony.

During the hearing, the ALJ asked the VE to assume a hypothetical person of Plaintiff's age, education, and past work experience, limited to light work; who can never climb ladders, ropes, and scaffolds; who should avoid exposure to unprotected heights and hazardous machinery; and is limited to simple, routine work. R. 92. The VE testified such an individual could not perform Plaintiff's past work. R. 92. The VE added such a person could do other light, unskilled work such as photocopy machine operator, mail clerk, and laundry classifier. R. 93. The ALJ asked the VE to assume the same hypothetical, but with additional five unscheduled breaks

ranging from 10 minutes to an hour on a random basis during an 8-hour work day. R. 93. The VE testified such a person could not perform any work. R. 93.

Plaintiff's attorney also questioned the VE. The attorney asked the VE to assume in addition to the ALJ's first hypothetical, this person would miss three to four days of work a month on a consistent basis. R. 94. The VE testified that while the Dictionary of Occupational Titles ("DOT") does not address absenteeism, his professional opinion is that any time an employee misses more than two days a month from a job for whatever reason, continued employment is unlikely. R. 94.

The attorney further asked the VE to assume, in addition to the ALJ's first hypothetical, someone who required accommodations to avoid overnight work shifts, flexibility in daytime work shifts, and scheduling frequent naps and frequent breaks to allow restoration and alertness throughout the day. R. 94. The VE responded that such a person could not do any work. R. 94.

## 2. The ALJ adequately incorporated Plaintiff's limitation in concentration, persistence, or pace into his hypothetical questions.

Contrary to Plaintiff's assertion that the Fifth Circuit has never ruled on this issue, the Fifth Circuit has held that "restrictions to rare public interaction, low stress, and simple, one- to two-step instructions reflect that the ALJ reasonably incorporated [the claimant's] moderate concentration, persistence, and pace limitations such that the hypothetical question was proper." *Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008); *accord Chabera v. Berryhill*, No. 2:17-CV-108

(S.D. Tex. May 2, 2018), ECF No. 18 at 20 ("[T]he ALJ's hypothetical limitation to 'simple routine tasks' or 'simple work related decisions' indicates the incorporation of Plaintiff's concentration, persistence, or pace impairments."); *Dunson v. Berryhill*, No. 7:17-CV-1, 2018 WL 1427107, at *6 (N.D. Tex. Mar. 22, 2018) (restricting claimant to "simple tasks" adequately incorporated moderate limitation in concentration, persistence, and pace). In this circuit, "an RFC assessment that reasonably incorporates a claimant's limitations is sufficient to uphold an RFC determination." *Dunson*, 2018 WL 1427107, at *6 (citing *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 904 (5th Cir. 2010) and *Bordelon*, 281 F. App'x at 422-23).

Thus, when the ALJ asked the VE to assume a hypothetical person limited to simple, routine work, and one who needs numerous breaks throughout the day, this adequately incorporated Plaintiff's limitation in concentration, persistence, or pace.[39] The Fifth Circuit does not require the ALJ to incorporate a "limitation of

---

[39] Plaintiff relied on *Cruz v. Colvin* for the proposition that restricting a claimant to simple, routine tasks in a hypothetical question does not account for limitations in concentration, persistence, and pace. In *Cruz*, the court found that restricting the claimant to "simple instructions, just one to three step tasks that are routine and repetitive without frequent changes in duties" did not adequately take into account moderate limitations in concentration, persistence, and pace. H-15-3389, 2016 WL 8672925, at *3 (S.D. Tex. Dec. 28, 2016), *report and recommendation adopted*, 2017 WL 1274296 (S.D. Tex. Jan. 27, 2017). However, the court in *Cruz* explained "[t]he Fifth Circuit has apparently not yet considered a case involving a hypothetical question with precisely these defects—i.e. failing to account for claimant's moderate difficulties with regard to concentration, persistence, and pace—but other circuits have done so, and found reversible error." *Id*. Here, Defendant brought controlling Fifth Circuit precedent to the Court's attention, so the Court need not look to the law of other circuits. Moreover, this case is factually distinct from *Cruz* because the ALJ asked the VE to assume a hypothetical person limited to simple, routine work *and* who required multiple breaks in an 8-hour work day. R. 93. Plaintiff also cited *Flores v. Berryhill*, in which the court—relying on *Cruz*—found restricting the claimant to unskilled work in the

23

concentration, persistence, or pace" into the hypothetical verbatim.[40] *Bauer v. Berryhill*, No. 7:17-CV-128, 2018 WL 3999687, at *6 (N.D. Tex. July 27, 2018) (citing *Herrera.*, 406 F. App'x at 904 and *Bordelon*, 281 F. App'x at 422-23), *report and recommendation adopted*, 2018 WL 3993812 (N.D. Tex. Aug. 21, 2018).

Moreover, "[t]he hypothetical question that an ALJ poses to a VE need only incorporate the disabilities that the ALJ recognizes." *Dunson*, 2018 WL 1427107, at *6 (quoting *Gardner v. Massanari*, 264 F.3d 1140, 2001 WL 822457, at *2 (5th Cir. 2001)). Though the ALJ found Plaintiff had moderate limitations in concentration, persistence, and pace, he did not find Plaintiff's alleged need for five to 10 breaks each day (each lasting from 10 minutes to an hour) to be entirely credible.[41] R. 28,

---

hypothetical question did not take into account moderate limitations in concentration, persistence, and pace. No. H-17-30, 2017 WL 3412163, at *10-11 (S.D. Tex. Aug. 8, 2017). *Flores* is likewise distinguishable because here, the ALJ asked the VE to assume a hypothetical person requiring several breaks throughout the day. R. 93.

[40] Even in the ALJ's final decision, "an ALJ need not include in the RFC the specific words 'moderate difficulties in the area of concentration, persistence, or pace' where, as here, the decision shows the ALJ considered those limitations in reaching the RFC determination." *Zuniga v. Colvin*, No. 2:17-CV-35, 2017 WL 7411229, at *8 (S.D. Tex. Dec. 18, 2017) (RFC that limited claimant to simple, routine tasks incorporated moderate limitation in concentration, persistence or pace), *report and recommendation adopted*, 2018 WL 791377 (S.D. Tex. Feb. 6, 2018).

[41] The ALJ noted that in June 2013—before Plaintiff's alleged onset date but after her narcolepsy diagnosis—Plaintiff reported taking medication to treat the narcolepsy and denied having to take naps during the day. R. 30, 679. Additionally, in November 2013, she kept a two-week sleep diary, during which she took naps on seven days. R. 582. On some of the days on which she had school, she took no naps. R. 582. In February 2014, Plaintiff took naps only five to six times a week. R. 30, 649-50. In April 2014, she took naps seven days a week for twenty minutes per nap. R. 645. Plaintiff objected to the ALJ's finding that the evidence "contains no objective findings to support the claimant's testimony regarding length and frequency of naps/breaks." ECF No. 10-1 at 16. Plaintiff alleged it was unclear what kind of objective evidence would support such a finding. *Id.*

29, 32. "The ALJ incorporated all disabilities and impairments he recognized in his hypothetical question to the VE. Therefore, there is no error…." "*Morrison v. Berryhill*, No. 4:16-CV-955, 2017 WL 2437274, at *6 (N.D. Tex. Mar. 14, 2017) (internal citations omitted), *report and recommendation adopted*, 2017 WL 2418693 (N.D. Tex. June 5, 2017).

### 3. Any error was harmless.

"If the administrative law judge's hypothetical omits a recognized limitation and the claimant or his representative is afforded the opportunity to correct deficiencies in the administrative law judge's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions there is no reversible error." *Bauer*, 2018 WL 3999687, at *6 (internal citation and quotation marks omitted). Here, Plaintiff's representative had a fair opportunity to correct any deficiencies in the ALJ's hypothetical and asked hypothetical questions incorporating Plaintiff's limitations in concentration, persistence, or pace in the form of frequent naps and breaks throughout an 8-hour work day. R. 94. Thus, any error was harmless and not reversible.

---

However, the Court finds that her own reports regarding her usual frequency of naps suffices and are inconsistent with an assertion that she needs multiple naps each day.

## IV.
## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment is **GRANTED**, and Ms. Holmes' motion for summary judgment is **DENIED**. Ms. Holmes' claims are **DISMISSED with prejudice**.

Signed on December 12, 2018, at Houston, Texas.

_____
Dena Hanovice Palermo
United States Magistrate Judge